LINCOLN v GUPTA

Docket Nos. 68690, 70510. Submitted April 9, 1984, at Detroit.— Decided February 21, 1985.

Plaintiff, Warren Lincoln, Sr., administrator of the estate of Donna M. Lincoln, deceased, brought an action in the Wayne Circuit Court against defendants, Narsingh Gupta, M.D., and Hutzel Hospital, alleging wrongful death as a result of medical malpractice. The jury returned a verdict of no cause of action as to both defendants. The trial court, Michael L. Stacey, J., entered an order granting a judgment to that effect and also an order taxing plaintiff with actual costs and attorney fees as to Hutzel Hospital in the amount of $17,500 and $13,500 as to Dr. Gupta. In Docket No. 68690, plaintiff appeals from the order granting the judgment on the jury verdict. In Docket No. 70510, the plaintiff appeals from the order taxing actual costs

REFERENCES FOR POINTS IN HEADNOTES

[1] 66 Am Jur 2d, Release §§ 37, 43.
74 Am Jur 2d, Torts § 69.
Modern trends with respect to release of one joint tortfeasor as discharging liability of others. 73 ALR2d 403.
[2] 53 Am Jur 2d, Master and Servant § 417.
74 Am Jur 2d, Torts §§ 61, 77.
[3] 73 Am Jur 2d, Statutes § 287.
[4] 66 Am Jur 2d, Release § 2.
[5] 66 Am Jur 2d, Release § 35.
[6] 3 Am Jur 2d, Agency §§ 267, 300.
[7] 75 Am Jur 2d, Trial §§ 255, 274.
[8] 61 Am Jur 2d, Physicians and Surgeons §§ 200, 311, 329, 362.
[9] 61 Am Jur 2d, Physicians and Surgeons § 229.
Modern status of views as to general measure of physician's duty to inform patient of risks of proposed treatment. 88 ALR3d 1008.
[10] 81 Am Jur 2d, Witnesses § 472.
[11] 31 Am Jur 2d, Expert and Opinion Evidence § 31.
61 Am Jur 2d, Physicians and Surgeons § 352.
[12] 40 Am Jur 2d, Hospitals and Asylums §§ 40, 44.
Necessity of expert evidence to support action against hospital for injury to or death of patient. 6 ALR3d 704.
[13] 61A Am Jur 2d, Pleading § 312.
[14] 4 Am Jur 2d, Appeal and Error §§ 290, 309, 314, 360.
[15] 5 Am Jur 2d, Arbitration and Award §§ 5, 145, 159.

and attorney fees. The appeals were consolidated by the Court of Appeals. *Held:*

1. The trial court correctly determined that the so-called contribution statute, MCL 600.2925d, is not applicable to this case. Dr. Carey, a resident physician who was assigned by the hospital to evaluate decedent upon admission and work with defendant Gupta on decedent's case, and Hutzel Hospital are not joint tortfeasors. The trial court improperly ruled that the covenant not to sue Dr. Carey executed by the plaintiff released Hutzel Hospital from liability since a covenant not to sue an agent does not release the principal from liability. The trial court's erroneous interpretation of the covenant is, under the circumstances, harmless error.

2. The jury's finding that there was no negligence in regard to Dr. Gupta's decision to perform the catheterization renders any possible error regarding the hospital's failure to prevent the catheterization harmless. A principal cannot be held liable if the agent having primary responsibility is not liable.

3. Defense counsel's reference to the covenant not to sue was improper but was not sufficiently prejudicial so as to require a new trial.

4. Remarks by the hospital's counsel regarding Dr. Gupta's ethnic background were not designed to inflame the jury against plaintiff. Remarks by Dr. Gupta's counsel suggesting that plaintiff's suit was motivated by Dr. Gupta's ethnic background were improper but not so prejudicial as to deny plaintiff a fair trial.

5. The trial court properly ruled that, under the circumstances of the present case, the hospital did not have a duty to obtain the informed consent of plaintiff's decedent. It was Dr. Gupta's duty to inform plaintiff's decedent of the risks of the procedure, not the hospital's or its personnel. If there was a breach of such duty, it was committed by Dr. Gupta.

6. The trial court did not err in denying plaintiff's motion to strike the testimony of Dr. Rhoda Powsner or in precluding plaintiff from impeaching Dr. Powsner's testimony with irrelevant evidence.

7. The trial court did not abuse its discretion in granting defendants' motion to quash the testimony of Abel Swirsky as an expert rebuttal witness.

8. The trial court did not abuse its discretion in denying plaintiff's motion to amend his complaint. The court's recitation of plaintiff's theory of the case, and instructions on agency liability and the hospital's standard of care were proper.

9. The circuit court had jurisdiction to award costs. The

motion for costs was timely and the bill of costs adequately complied with the court rule pertaining thereto.

10. The circuit court erroneously interpreted Wayne County Court Rule 403.15 by construing plaintiff's partial acceptance of the mediation panel's award as a rejection *in toto*. The rule should be interpreted to allow a partial acceptance.

The judgment on the jury verdict of no cause of action is affirmed. The portion of the order taxing actual costs and attorney fees against plaintiff as to Hutzel Hospital is affirmed and is reversed as to Dr. Gupta.

1. TORTS — JOINT TORTFEASORS — RELEASE — COMMON LAW.
   At common law, the release of one of several joint tortfeasors released all of the other joint tortfeasors; under Michigan law, the release of one of several joint tortfeasors does not release other joint tortfeasors unless the terms of the release so provide (MCL 600.2925d; MSA 27A.2925[4]).

2. TORTS — JOINT TORTFEASORS — *RESPONDEAT SUPERIOR.*
   A master or principal and servant or agent are technically not joint tortfeasors where the master or principal's liability is based solely on the doctrine of *respondeat superior.*

3. STATUTES — JUDICIAL CONSTRUCTION — COMMON LAW.
   Statutes in derogation of the common law are to be strictly construed.

4. COMMON LAW — COVENANTS NOT TO SUE — RELEASE.
   There is a distinction under the common law between a covenant not to sue and a release of liability.

5. RELEASE — COVENANT NOT TO SUE.
   A covenant not to sue an agent does not release the principal from liability.

6. AGENCY — LIABILITY OF PRINCIPAL.
   A principal cannot be held liable where the agent having primary responsibility is not liable.

7. TORTS — RELEASE — TRIAL.
   The jury shall not be informed of the existence of a settlement or the amount paid, unless the parties stipulate otherwise, where there is no genuine dispute regarding either the existence of a release or a settlement between the plaintiff and a codefendant or the amount to be deducted from the jury's verdict as a result of the release or settlement.

8. ACTION — MALPRACTICE — DUTY.
   A plaintiff administrator of a decedent's estate must establish as

a matter of law that the defendant had a duty to the plaintiff's decedent before the plaintiff may maintain a malpractice cause of action for wrongful death; the question of whether the defendant owes an actual duty to the plaintiff's decedent is for the trial court to decide as a matter of law.

9. PHYSICIANS AND SURGEONS — DUTY TO WARN.
A physician has a duty to warn a patient of the consequences of a medical procedure.

10. TRIAL — WITNESSES — CROSS-EXAMINATION.
The scope of cross-examination of witnesses rests in the sound discretion of the trial court.

11. WITNESSES — EXPERT WITNESSES.
An expert witness in a medical malpractice case must possess the necessary learning, knowledge, skill or practical experience that would enable him to competently testify concerning that area of medicine; the qualification of expert witnesses is a matter for the discretion of the trial judge.

12. HOSPITALS — MALPRACTICE — STANDARD OF CARE — EXPERT WITNESSES.
Expert testimony is required to establish the standard of care when a medical malpractice action is brought against a hospital.

13. PLEADING — AMENDMENT OF COMPLAINTS — FUTILE AMENDMENTS.
A trial court does not abuse its discretion in denying a plaintiff's motion to amend his complaint where the amendment would have been futile.

14. COURTS — COURT OF APPEALS — JURISDICTION — ENFORCEMENT OF JUDGMENTS — COURT RULES.
The Court of Appeals gains jurisdiction over a case when the claim of appeal is filed and the entry fee is paid; however, the lower court's judgment is enforceable absent an order staying enforcement (GCR 1963, 530, 802.1).

15. COURT RULES — MEDIATION — PARTIAL ACCEPTANCE OF MEDIATION AWARD — WAYNE COUNTY COURT RULES.
A Wayne County Circuit Court Rule regarding the effect of mediation is intended to help expedite and simplify the final settlement of cases, therefore, the rule should be interpreted to allow a partial acceptance of a mediation award in a multiple-party litigation (WCCR 403.15).

*Law Offices of Smith & Quinn, P.C.* (by *Richard M. Amsbaugh),* for plaintiff.

*Kitch, Suhrheinrich, Smith, Saurbier & Drut-chas, P.C.* (by *Paul L. Kaliszewski* and *Anthony G. Arnone*), for Narsingh Gupta, M.D.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Daniel G. Wyllie* and *James M. Cameron, Jr.*), for Hutzel Hospital.

Before: HOOD, P.J., and M. J. KELLY and R. C. LIVO,* JJ.

PER CURIAM. Plaintiff appeals as of right from the trial court's order granting a judgment on the jury verdict of no cause of action on his medical malpractice claim (Docket No. 68690) and the trial court's order taxing actual costs and attorney fees against plaintiff (Docket No. 70510).

Decedent, plaintiff's wife, was referred by her physician to defendant Gupta, a heart specialist, for treatment of chest pains. Defendant Gupta concluded that decedent had arteriosclerotic heart disease. Defendant Gupta made arrangements to have decedent admitted to defendant Hutzel Hospital for a catheterization. During the operation, performed by defendant Gupta on September 8, 1978, decedent experienced chest pain. Due to continuing chest pain, decedent was transferred to the coronary care unit for monitoring. After two days, decedent was transferred to a private general-care room. On September 11, 1978, decedent suffered a fatal heart attack. On May 22, 1979, plaintiff, as administrator of decedent's estate, filed the instant wrongful death action against defendants Gupta and Hutzel Hospital, alleging medical malpractice. On November 23, 1982, the jury returned a verdict of no cause of action as to both defendants. On March 16, 1983, the trial

* Circuit judge, sitting on the Court of Appeals by assignment.

judge entered an order taxing plaintiff with actual costs and attorney fees as to Hutzel Hospital in the amount of $17,500 and $13,500 as to Dr. Gupta.

I

Approximately one month before trial, plaintiff executed a covenant not to sue Dr. Edmund Carey, a first-year resident physician who was assigned by the hospital to evaluate decedent upon admission and work with defendant Gupta on decedent's case. The covenant not to sue Dr. Carey provided: "[t]his instrument is not a release to any of the claims made against Dr. Narsingh Gupta or Hutzel Hospital, nor to any other person whomsoever, but is simply a covenant not to sue Dr. Edmund Carey * * *." Defendant Hutzel Hospital made a pretrial motion to bar plaintiff from proceeding against defendant Hutzel Hospital for vicarious liability arising out of acts or omissions of Dr. Carey, based on the covenant not to sue. The trial court granted defendant Hutzel's motion, ruling that a covenant not to sue an employee operates as a release as to the employer whose liability arises only by operation of law under *respondeat superior.* Plaintiff cited the contribution statute, MCL 600.2925d; MSA 27A.2925(4), for the proposition that the covenant not to sue did not discharge the hospital from liability. The trial judge rejected this argument, stating that MCL 600.2925d; MSA 27A.2925(4) was not applicable. Accordingly, he instructed the jury "[t]hat Hutzel Hospital is not liable for the acts or omissions of Dr. Edmund Carey".

On appeal, plaintiff contends that he is entitled to a new trial because the trial court improperly granted defendant Hutzel's motion and improperly

instructed the jury. Plaintiff argues that the trial court's ruling prevented plaintiff from developing one of his major theories of liability against the hospital, that the cardiac catheterization should not have been performed on decedent and that defendant Hutzel's agent, Dr. Carey, should have prevented defendant Gupta from performing it.

At common law, the release of one of several joint tortfeasors released all other joint tortfeasors. *Slater v Ianni Construction Co,* 268 Mich 492, 494; 256 NW 495 (1934). The so-called contribution statute, which was amended in 1974, provides in part:

> "When a release or a covenant not to sue or not to enforce judgment is given in good faith to 1 of 2 or more persons liable in tort for the same injury or the same wrongful death:
> "It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide." MCL 600.2925d; MSA 27A.2925(4).

Thus, under current Michigan law, the release of one of several joint tortfeasors does not release other joint tortfeasors unless the terms of the release so provide. However, where the master or principal's liability is based solely on the doctrine of *respondeat superior,* the master or principal and servant or agent are technically not joint tortfeasors. *Geib v Slater,* 320 Mich 316; 31 NW2d 65 (1948), *overruled on other grounds, Moore v Palmer,* 350 Mich 363; 86 NW2d 585 (1957); *Willis v Total Health Care of Detroit,* 125 Mich App 612, 617; 337 NW2d 20 (1983). Statutes in derogation of the common law are to be strictly construed. *Morgan v McDermott,* 382 Mich 333, 357; 169 NW2d 897 (1969). Accordingly, we agree with the trial court that since Dr. Carey and defendant Hutzel

are not joint tortfeasors MCL 600.2925d; MSA 27A.2925(4) is not applicable to the present case.

Under the common law, there is a distinction between a covenant not to sue and a release of liability. See *Cook v City Transport Corp,* 272 Mich 91, 92-93; 261 NW 257 (1935). A covenant not to sue an agent does not release the principal from liability. *Thomas v Checker Cab Co, Inc,* 66 Mich App 152, 161; 238 NW2d 558 (1975). Therefore, in the present case, the trial court improperly ruled that the covenant not to sue Dr. Carey released defendant Hutzel from liability. We find, however, that reversal is not required. Since the jury returned a verdict of no cause of action in favor of defendant Gupta, the jury determined that defendant Gupta had not negligently performed the operation or negligently decided to perform it. Therefore, defendant Hutzel could not be held liable for the alleged omission of Dr. Carey in not preventing the operation. Consequently, the trial court's erroneous interpretation of the covenant not to sue is harmless.

For similar reasons, we find that the trial court did not err reversibly by precluding argument regarding the hospital's failure to prevent the catheterization. Plaintiff's argument was that defendant hospital was liable because Dr. Sobczek, Dr. Carey's superior, should have prevented defendant Gupta from performing the catheterization. The jury's finding that there was no negligence in regard to Dr. Gupta's decision to perform the catheterization would render any possible error on this issue harmless. A principal, such as defendant Hutzel Hospital, cannot be held liable if the agent having primary responsibility is not liable. See *Ravenis v Detroit General Hospital,* 63 Mich App 79; 234 NW2d 411 (1975).

## II

Plaintiff argues that he was denied a fair trial by certain remarks of defense counsel. First, plaintiff objects to the hospital's attorney's reference to the covenant not to sue Dr. Carey. Defense counsel's reference to the covenant was made while objecting to plaintiff's counsel's direct examination of plaintiff's expert:

"Furthermore, he's asking for a question as to whether or not the hospital, through its agents violated the standard of care by the covenant not to sue that was given to Dr. Carey by the plaintiff, this Court has already ruled, he's prohibited from going into this against the hospital."

Plaintiff argues that he was prejudiced by this statement because the jury may have believed that plaintiff had discharged Dr. Carey from liability or given him immunity in exchange for perjured testimony. Plaintiff argues that such prejudice could not have been cured by a cautionary instruction. Defense counsel's reference to the covenant not to sue was improper under *Brewer v Payless Stations, Inc*, 412 Mich 673, 679; 316 NW2d 702 (1982). However, we do not believe that counsel's one-time reference to the covenant was sufficiently prejudicial so as to require a new trial. *Reetz v Kinsman Marine Transit Co*, 416 Mich 97, 106; 330 NW2d 638 (1982).[1]

Plaintiff also argues that he was denied a fair trial by defense counsel's references to racism. The

[1] Plaintiff also contends that he was prejudiced by defendant Gupta's counsel's reference to the court's ruling on the covenant when he stated in the presence of the jury: "He [Dr. Carey] is not my agent. I don't believe, pursuant to the court's prior ruling he is anybody's agent. * * *." Counsel's vague reference to the covenant is not the type of repeated, prejudicial reference that warrants a new trial. *Reetz, supra,* pp 105-106.

record discloses that counsel for the hospital did refer to Dr. Gupta's ethnic background, but only in the course of discussing his medical qualifications. We cannot conclude, as plaintiff suggests, that defense counsel's questions were designed to inflame the jury against plaintiff's counsel. The remarks made by defendant Gupta's counsel in closing argument are of a different nature.[2] The argument of Gupta's counsel suggests that plaintiff's suit against defendant Gupta was motivated by Gupta's ethnic background. Such argument was improper. It lacked evidentiary support and was calculated to arouse prejudice against plaintiff. Plaintiff did not object to defense counsel's remarks but argues that the possible prejudice could not have been cured by an instruction from the bench. We do not believe that counsel's argument was so prejudicial as to deny plaintiff a fair trial. *Reetz, supra,* p 103.

## III

Plaintiff contends that the trial court improperly prevented plaintiff from presenting evidence that defendant hospital was negligent in not obtaining decedent's informed consent and improperly instructed the jury that only defendant Gupta had a duty to inform the decedent of the risks and alternatives to the surgery performed. On appeal, plaintiff argues that a hospital has a duty to reasonably inform a patient undergoing a surgical procedure on its premises of the risks involved at

---

[2] Counsel argued:

"I submit, ladies and gentlement of the jury, to you that if Doctor Gupta was—had red hair, blue eyes, white Anglo-Saxon, protestant. Where Mr. Maher went on at length about a white Anglo-Saxon protestant did this and that and did that. Now, he thought that, you know, maybe Mr. Quinn and Mr. Maher [plaintiff's attorneys] were a little prejudiced. They thought maybe the minorities, let's give that one a shot."

that hospital. Plaintiff argues that the trial court improperly precluded plaintiff from proving that defendant hospital breached its duty to reasonably inform plaintiff of the greater risk at defendant hospital due to the lack of surgical facilities.

We find no error. Before plaintiff may maintain a cause of action he must establish as a matter of law that defendant had a duty to plaintiff's decedent. *Lanczki v Providence Hospital,* 77 Mich App 732, 735; 258 NW2d 238 (1977). The question of whether defendant owes an actual duty to the plaintiff is for the trial court to decide as a matter of law. *Friedman v Dozorc,* 412 Mich 1, 22; 312 NW2d 585 (1981). We believe that the trial court properly ruled that, under the circumstances of the present case, the hospital did not have a duty to obtain the informed consent of plaintiff's decedent.

A physician has a duty to warn a patient of the consequences of a medical procedure. *Roberts v Young,* 369 Mich 133; 119 NW2d 627 (1963). Here, defendant Gupta was decedent's private physician retained to perform the catheterization. It was defendant Gupta's duty to inform her of the risks of that procedure, not that of the hospital or its personnel. See *Cox v Haworth,* 54 NC App 328; 283 SE2d 392 (1981). Plaintiff contends that the hospital was under a duty to inform decedent of the risks of having surgery at Hutzel Hospital based on the hospital's facilities, services, staff and equipment. We do not believe that this is the type of information that a hospital is under a duty to impart to a patient. Rather, the patient's physician is the person with whom the patient should discuss these matters. The physician is the best person to properly discuss the particular procedure with the patient and where to obtain the proper services and facilities.

Plaintiff also argues that since the hospital voluntarily undertook the duty to inform decedent, by supplying the informed consent form, there was a question of fact of whether the hospital reasonably informed decedent of the risks. Plaintiff cites *Magana v Elie,* 108 Ill App 3d 1028; 439 NE2d 1319 (1982), in support of his position. In *Elie,* the plaintiff alleged that the defendant was a physician having privileges at the defendant hospital, that the defendant doctor had performed a surgical procedure upon plaintiff in the hospital without informing her of the possible consequences of the surgery, and that the defendant hospital had a duty to require physicians granted privileges at the hospital to obtain the informed consent of its patients. The court reversed the grant of the hospital's motion to dismiss based on failure to state a cause of action, holding:

"Whether the standard of care which defendant Hospital must meet to satisfy its duty to its patients provides that the Hospital require physicians to whom it grants use of its facilities to advise their patients of the risks attendant to treatment therein cannot be determined as a matter of law. It, instead, must be determined by proof of the requisite standard by which the Hospital's conduct is to be measured. * * * If that standard of care provides that the Hospital take affirmative steps to require the physician to advise his patients of risks attached to the medical procedures to be carried out in the Hospital, a failure to meet such standard could be negligence." 108 Ill App 3d 1032; 439 NE2d 1322 (citations omitted).

In the present case, there was no allegation that defendant Hutzel does not require its doctors to advise patients of the risks of medical procedures performed at the hospital. Decedent's consent was obtained on a form supplied by defendant hosptial. The form was signed, however, by defendant

Gupta. If there was any breach of the duty to inform decedent of the risks attached to the medical procedures to be carried out at the hospital, it was committed by defendant Gupta.

## IV

Plaintiff contends that the trial court abused its discretion by denying plaintiff's motion to strike the testimony of Dr. Rhoda Powsner, M.D. Dr. Powsner was called by defendant hosptial to testify as to the standard of care of a hospital and the standard of care to which a cardiologist must conform in recommending a catheterization. During plaintiff's cross-examination, Dr. Powsner was asked whether there is a national standard of cardiac care. Dr. Powsner responded, "There are no actual national standards. There are variations within which—parameters within which care can be given." at the conclusion of Powsner's testimony, plaintiff moved to strike her testimony on the grounds that she incorrectly stated that there was not a national standard of care. We find no error. The testimony plaintiff complains of goes to the weight of the evidence, not the admissibility. Plaintiff called his own expert to testify as to the standard of care. The weight to be accorded these differing opinons was for the jury to decide.

Plaintiff also contends that the trial court abused its discretion by precluding plaintiff from impeaching Dr. Powsner's qualifications and competence as an expert by introducing evidence of a 1977 circuit court opinion indicating that Dr. Powsner was properly denied privileges of performing catheterizations at St. Joseph Mercy Hospital because she was unqualified. The scope of cross-examination of witnesses rests in the sound discretion of the trial court. *Wilson v Stilwill*, 411

Mich 587, 599; 309 NW2d 898 (1981). Dr. Powsner was not called to testify on the proper method of performing catheterizations. Rather, she testified on the standard of care for hospitals regarding necessary equipment and facilities, on when catheterizations are clinically indicated, and on the pre- and post-catheterization standard of care. Questions about Dr. Powsner's qualifications to perform a catheterization had no bearing on her competency to testify on these issues or her credibility on these issues. Consequently, we find that the trial judge did not abuse its discretion by sustaining defendant's relevancy objection. *Stilwill, supra.*

## V

Prior to trial, defendants moved to quash the testimony of Abel Swirsky, a hospital administrator who would have testified as to the standard of care for administration of a hospital performing cardiac catheterizations and the standards of the Joint Commission of Accreditation of Hospitals. Plaintiff's attorney responded with an offer of proof that Swirsky had 25 years of experience in the field of health care administration and had promulgated rules and regulations for the licensing of hospitals. Counsel conceded, however, that Swirsky lacked knowledge of proper medical treatment and relied on doctors for assessments of medical risks. On appeal, plaintiff asserts that the circuit court abused its discretion by granting defendants' motion and subsequently disallowing plaintiff's motion to call Swirsky as an expert rebuttal witness.

The qualification of expert witnesses is a matter for the discretion of the trial judge. *Siirila v Barr-*

*ios,* 398 Mich 576, 591; 248 NW2d 171 (1976). The expert witness must possess the necessary learning, knowledge, skill or practical experience that would enable him to competently testify concerning that area of medicine. *Barrios, supra.* Plaintiff attempted to show that defendant hospital breached the standard of care regarding the provision of proper personnel, facilities, equipment and pre- and post-operative care. When a medical malpractice action is brought against a hospital, expert testimony is required to establish the standard of care. *Stilwill, supra,* p 611. In the present case, defendants do not question the competency of Swirsky as a hospital administrator. Rather, they contend that Swirsky was not competent to testify as to the proper medical procedures a hospital should follow in treating cardiac catheterization patients. Plaintiff's counsel admitted that Swirsky's deposition testimony showed that he lacked knowledge of proper medical treatment and relied on doctors for the assessment of medical risks. Consequently, we find no abuse of discretion.

## VI

We have examined the remainder of plaintiff's contentions in Docket No. 68690 and find them without merit. The trial court did not abuse its discretion in denying plaintiff's motion to amend his complaint, as the amendment would have been futile. *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649, 660; 213 NW2d 134 (1973). The trial court's recitation of plaintiff's theory of the case was proper. See GCR 1963, 516.7(c). The court properly instructed the jury on agency liability. *Warfield v Wyandotte,* 117 Mich App 83, 91; 323 NW2d 603 (1982). We find no manifest injustice in the court's instruction on the hospital's standard of care.

## VII

Plaintiff also appeals from the trial court's order taxing actual costs and attorney fees against plaintiff. Prior to trial, a mediation panel recommended an award of $400,000 to plaintiff, consisting of $300,000 against defendant Gupta and $100,000 against defendant Hutzel. Defendant Gupta rejected the evaluation; defendant Hutzel accepted. Plaintiff's counsel filed a partial acceptance and partial rejection of the award, accepting the award as to Gupta and rejecting the award as to Hutzel.

On December 6, 1982, the trial court entered a judgment of no cause of action in favor of defendants. The judgment provided that costs were to be taxed against plaintiff. On December 7, 1982, defendant Hutzel filed a motion for actual costs, pursuant to Wayne County Court Rule 403.15. On December 14, 1982, defendant Gupta filed his motion for taxation of actual costs. On December 21, 1982, plaintiff filed his claim of appeal. On February 18, 1983, the trial court heard arguments on defendants' motions. Plaintiff argued that the circuit court no longer had jurisdiction to hear defendants' motions, that defendants' motions were untimely, and that defendants' claims were not properly documented. Plaintiff also argued that defendant Gupta was not entitled to actual costs and attorney fees because plaintiff had accepted the mediation evaluation as to him. The judge disagreed, construing the partial acceptance as a rejection, and awarded costs and fees to both defendants under WCCR 403.15(e).

Plaintiff argues that the circuit court was without jurisdiction to award costs after plaintiff had filed his claim of appeal. We disagree. This Court gains jurisdiction over a case when the claim of appeal is filed and the entry fee is paid. GCR 1963,

802.1. However, a judgment is enforceable absent an order staying enforcement. See GCR 1963, 530. Here, the judgment had been entered taxing costs against plaintiff. All that remained to be done was a ministerial task of documenting the costs and fees. Clearly, the court rules contemplate such an overlap. Compare GCR 1963, 526.10, which allows 30 days after entry of judgment to file a bill of costs, with GCR 1963, 803.1, which sets a 20-day limit on filing a claim of appeal. Plaintiff's claim, that defendants' motions for costs were untimely, is similarly without merit. Costs were taxed by the court pursuant to GCR 1963, 526.10(1), not by the clerk pursuant to subsection (2). Defendants' bill of costs also adequately complied with GCR 1963, 526.11.

We agree, however, that the circuit court erroneously interpreted WCCR 403.15, by construing the partial acceptance as a rejection. The fact that the court rule does not refer to multiple-party litigation is not grounds for interpreting it to require acceptance or rejection *in toto.* The policy of the rule is to expedite and simplify the final settlement of cases. *Cooper v Automotive Finishes, Inc,* 109 Mich App 530, 533; 311 NW2d 414 (1981). Interpreting the rule to require a total acceptance or rejection does not promote this policy. Interpreting the rule to allow a partial acceptance does, however, promote the policy of the rule.

## VIII

The circuit court's judgment on the jury verdict of no cause of action is affirmed (Docket No. 68690). That portion of the trial court's order taxing actual costs and attorney fees against plaintiff as to defendant Gupta under WCCR 403.15(e) is reversed (Docket No. 70510).

Affirmed in part and reversed in part.